B. A. Davis et al., Appellants, v. Howard County Agricultural
Society et al., Appellees.

No. 39656.

June 24, 1929.

Rehearing Denied September 21, 1929.

*Senneff, Bliss, Witwer & Senneff,* for appellants.

*McCook & Lyons* and *W. L. Barker,* for appellees.

Albert, C. J.—The Howard County Agricultural Society is
a corporation organized under the laws of the state of Iowa, for
the purpose of holding county fairs. It had arranged to hold its
annual fair at Cresco, Iowa, August 15th to 19th,
inclusive, 1927, horse racing to be a part of its
fair program. The Harness Horse Association is
a corporation organized for pecuniary profit un-
der the laws of the state of Illinois, with its principal place of

business in Chicago. Among its powers and purposes is to make rules and regulations governing racing of harness horses and to publish the same; to issue sanctions, register horses, and license drivers, permitting other individuals or corporations to use these rules and regulations; and to give fairs and horse shows.

The defendant Howard County Agricultural Society had what is called the "official sanction" of the Harness Horse Association to hold a race meet at the fairgrounds in Cresco, under the rules of the Harness Horse Association, from August 15th to 19th, 1927. This Harness Horse Association is one of numerous associations of a similar kind in the United States, among which is an association known as the American Trotting Association. Owners of horses were permitted, for a consideration, to register their horses with the Harness Horse Association, and drivers were also, for a consideration, issued a license by this association, authorizing them to drive under its rules.

B. A. Davis, one of the plaintiffs, was the owner of three horses which had been registered with the Harness Horse Association, and Henry Eldridge was his licensed driver. T. J. McDermott was the owner of one horse, and E. Tuller was the owner of two horses, all of which were registered with the Harness Horse Association. The aforesaid "official sanction" held by the Howard County Agricultural Society was good for one year, and was procured by the payment to the Harness Horse Association of a certain percentage of the prizes offered by the said Agricultural Society under the rules of the Harness Horse Association, which will hereinafter be more fully referred to. The races of the Howard County Agricultural Society were to be conducted under its rules.

It appears that, prior to the time of the holding of the races by the defendant Agricultural Society, the plaintiffs had duly entered their horses for the races to be held on the said 15th to 19th days of August, 1927, and paid their entrance fee according to the rules of the Howard County Agricultural Society. This made a contract between the owners of these horses and the said Agricultural Society, the substance of which was that the owners of these horses were permitted to and agreed to participate in the races scheduled for which they were entered; and also permitted them, if their horses occupied proper positions, to participate in the prize money offered by the Agricultural Society.

Prior to the time in controversy herein, about August 1st, the Agricultural Society of Calhoun County had conducted a race meet at Rockwell City. This latter society did not have the sanction or right from the Harness Horse Association, being a member of the American Trotting Association, and conducted its racing under the rules of the latter association. At the time of the Rockwell City meet, the secretary of the Harness Horse Association attempted to assess a fine of $200 against the authorities conducting the Rockwell City meet, and also to fine and suspend the horses and drivers registered with the Harness Horse Association who participated in this meet, among whom were the plaintiffs in this action. Later, a race meet was held at Sac City, which was also associated with the American Trotting Association, and these owners and drivers also participated in this meet, shipping their horses from Sac City to Cresco, preparatory to participating in the race meet to be held by the defendants. When the time came for the meeting at Cresco, a telegram was received by said Agricultural Society, advising them that the plaintiffs, drivers, and horses had been suspended, and directing the society not to allow them to participate in this race meet, because of the fact that they were under suspension; and acting thereon, the Agricultural Society advised the plaintiffs that they could not participate in the on-coming race meet. The plaintiffs then brought this action, asking and obtaining a temporary injunction enjoining the defendants from preventing them and their horses from participating in this race meet. The temporary writ was issued and served, and, acting under the same, the society permitted these horses and drivers to participate in the meet, certain of the horses owned by the plaintiffs being successful in winning some of the money offered by the society as prizes in said meet.

Under the rules of the Harness Horse Association, among others, it is provided, in substance, that, when horses which are suspended do in fact participate in a race and win money, the same shall be paid over to the Harness Horse Association at its office in Chicago. The defendants, by way of answer, admit certain of these facts, but attempt to justify their action in refusing to allow these horses and drivers to participate in said meet on the ground that, under the rules of the Harness Horse Association, being under suspension, they were not entitled to so partici-

pate, and that the defendants were justified in refusing to allow them to participate, by reason of the order received from the Harness Horse Association.

Quite elaborate arguments are presented to us on the various phases of the matters involved herein; but the questions decisive of the case, in our judgment, are not very numerous.

It is to be noted, in passing, that the registration of these horses, the issuance of a license to drivers, and the sanctions issued to the various associations to conduct races under the rules of the Harness Horse Association, do not, in fact, make any of the holders thereof members of the association, in the sense that they are to be considered as stockholders therein.

. In the final analysis of the case, the real question is whether or not the Howard County Agricultural Society was justified in refusing to permit these horses to race, by reason of the rules of the Harness Horse Association, and under the order issued to said Agricultural Society. The determination of this question necessitates a consideration of the articles of incorporation and the rules and regulations of the Harness Horse Association. In other words, were the suspension and fining of the plaintiffs' horses and drivers within the power of the Harness Horse Association or its officers?

The root of this trouble started with the race meet at Rockwell City, and it is on the facts surrounding that meet that the Harness Horse Association assumed to assess the fine and suspend the horses and drivers. It goes without saying, of course, that, so long as the racing association at Rockwell City was not a member of or associated with the Harness Horse Association, and did not have the sanction from said association, any attempt on the part of said association to assess a fine against the Fair Association at Rockwell City was wholly without authority and void.

The situation which gave rise to this action on the part of the Harness Horse Association in fining and suspending the horses and drivers registered with it grows out of the following facts: In the early history of harness horse racing in the United States, the horses were classified in accordance with the fastest time they had made in any given year. In other words, it was a "time" classification. This classification was followed for many years by the American Trotting Association. The classification adopted and used by the Harness Horse Association was what is

known as a "money earned" classification. In 1927, the American Trotting Association for the first time adopted the money earned classification. The Harness Horse Association claims to have had a copyright on the method of classifying horses under the theory of money earned, and this copyright is seriously assaulted in this case, under the claim that it is invalid because it was not subject to copyright, lacked novelty, and was not a new theory, the same having been used for many years in Europe, and having been advocated for about 40 years in the United States prior to the time of its adoption by the Harness Horse Association. We do not presume to pass upon this phase of the question, as we do not deem it material to a final disposition of the case.

The secretary of the Harness Horse Association testified that the action in attempting to fine the owners and suspend the horses of plaintiffs and to revoke the licenses of the drivers was because they participated in the meet at Rockwell City under the rules of the American Trotting Association thus adopted in 1927, which it is claimed was an infringement on the copyright of the Harness Horse Association, and for racing these horses at Rockwell City under the rules of the American Trotting Association. Broadly stated, there is nothing in the Rule Book of the Harness Horse Association that prohibits horses registered with the latter association from racing over tracks affiliated with any other race association. In fact, the evidence in the case shows that the president of the Harness Horse Association, the members of the board of directors, and stockholders of the association raced horses owned by them indiscriminately over tracks of other associations, and also over tracks of the American Trotting Association in the year 1927, where the latter association was conducting races under the money earned classification; and in addition, the record is wholly silent as to any rule officially adopted by the Harness Horse Association which would prevent owners of horses registered with the latter association from racing on any tracks conducted by any other association. So that the fact that these horses and drivers participated in the race meet at Rockwell City under the American Trotting Association and the money earned classification could not be a basis for the action of the Harness Horse Association in fining the plaintiffs, suspending their horses, or revoking the licenses of their drivers. A careful reading of all of the rules set forth in the Rule Book of the Harness Horse As-

sociation shows that the power to fine, suspend, and revoke licenses is specifically provided for, some 21 grounds being specified for the exercise of such power, none of which grounds in any way authorize the fine and suspension of these plaintiffs or their horses, or the revocation of the licenses of the drivers.

There is, in addition to these 21 grounds, an additional ground or general rule which provides as follows:

"The secretary of the Harness Horse Association may summarily fine, suspend, or expel any horse, owner, nominator, driver, official, or association for any of the causes therefor *herein* provided."

It is the claim of the secretary that, by reason of this provision, he was authorized to assess these fines, suspend the horses and owners, and revoke the licenses of the drivers as he did. It takes but a cursory reading to see that this power of the secretary is limited to the 21 grounds "herein provided;" and, as suggested above, the association itself had no power to fine the owners, suspend the horses, or revoke the licenses of the drivers on the ground on which it was attempted to be done in this case; and, of course, if the association had not this power, the secretary would not have it. In fact, a reading of the rules shows that it was the contemplation of the association that the horses registered with it could race over the tracks which did not hold a sanction from the Harness Horse Association. One of the rules, among other things, recites:

"Should a horse race over a track not racing under the Harness Horse Association rules, and the clerk of the course or other official fails to enter the winnings in the registration book of the horse, then the owner or driver of the horse shall do so, and sign his name thereto."

In the case at bar, it appears that whatever fines were assessed, suspensions made, or drivers' licenses revoked, were done by the secretary. There is no showing whether any entry whatever was made of this matter on the books of the corporation. The order of suspension which was sent to the Howard County Agricultural Society seems to be lacking in one respect. The rules of the association required that "every order of suspension, except for entrance fees, must state the duration of such suspen-

sion.'' No time was fixed apparently, in so far as the plaintiffs or their horses were concerned. It must be held, therefore, that the attempt made by the secretary of the Harness Horse Association to fine these owners, suspend their horses, and revoke the licenses of their drivers was wholly void, for the reason that no such power rested in him, or, in fact, with the association itself, because no rules or by-laws of the association had been violated or infracted by these owners, drivers, or horses. It would follow, therefore, that the defendants have not justified their conduct in refusing to allow these horses to race according to the contract which they had previously made with the owners.

The defendants respond to this situation, however, by saying that the matter in controversy is wholly provided for under the rules of the association, and that it therefore should have been adjusted within the corporation itself, and that the courts have no jurisdiction, so long as the corporation itself has provided a means by which the rights of the parties shall be determined. A careful reading of the by-laws, rules, and regulations of the Harness Horse Association does not sustain this contention of the defendants'. It is true that an appellate tribunal is provided for in the rules of this association, and appeals are provided for under certain circumstances, and only the matters that are appealable are specified in such rules and regulations; but, unfortunately for the defendants, the matter here in controversy is not covered by the rules specifying the matters from which appeal may be taken. In other words, there is no provision in the rules for one to appeal to the Harness Horse Association from a decision by the Harness Horse Association or its secretary; and we conclude, therefore, that the defendants have not made out a successful defense to the cause of action pleaded by the plaintiffs, and that the action of the secretary in fining these owners, suspending their horses, and revoking the drivers' licenses, was wholly without authority and void. Further, there is no provision in the by-laws, rules, and regulations of the Harness Horse Association by which the plaintiffs could redress their grievances for the things that were done which were the alleged basis on which these fines, suspensions, and revocations were based; and the attempted action to fine, suspend, and revoke the licenses was wholly without authority and void.

One further question is left in the case: As heretofore sug-

gested, these horses did, by authority of the court, participate in these races, and won certain money. Under order of the court,  this money was held by the defendant society to await its further order. As suggested, one of the rules of the association required that, when horses which are under suspension participate in a race and win money, the society in charge shall pay such money to the Chicago office of the Harness Horse Association, which is to make distribution under the rules. Having heretofore held that the order of suspension and the revoking of the licenses of the drivers were absolutely void, have we a right to make an order as to the money won by these horses? When the temporary injunction was issued and the Chicago office of the Harness Horse Association was advised thereof, the association, by its secretary, wired the defendant society, directing the defendants to hire a lawyer, set aside the injunction, and "we will guarantee you against damages or loss, pay all attorneys' fees and costs, and protect you in every way." This was an authorization to the defendant society to protect the interests of the Harness Horse Association and to defend the action for and in behalf of the last-named association. The defendants having done so, we feel that there is no reason why the owners of these horses should not be paid the money which was won by their horses.

No question is raised in the case of want of proper parties to the action.

It is therefore ordered that the defendant society shall pay to the plaintiffs, within 30 days from the final disposition of this case in this court, the respective amount of said prizes won by the horses of the respective owners.—*Reversed.*

STEVENS, FAVILLE, DE GRAFF, and MORLING, JJ., concur.